UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LI-CYCLE HOLDINGS CORP., *et al.*,<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25-[_____] (____)<br><br>(Joint Administration Requested) |

### DECLARATION OF WILLIAM E. AZIZ IN SUPPORT OF EX PARTE APPLICATION FOR AN ORDER (A) GRANTING PROVISIONAL RELIEF AND (B) SCHEDULING HEARING ON SHORTENED NOTICE PURSAUNT TO SECTIONS 105(a), 1519 AND 1521(a)(7) OF THE BANKRUPTCY CODE

I, William E. Aziz, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am the Chief Restructuring Officer (the "CRO") of Li-Cycle Holdings Corporation ("Holdings"), and the duly authorized foreign representative of Holdings, Li-Cycle U.S. Inc. ("North America Opco"), Li-Cycle Inc. ("U.S. SpokeCo"), and Li-Cycle North America Hub, Inc. ("U.S. HubCo," and, together with Holdings, North America OpCo and U.S. SpokeCo, the "Chapter 15 Debtors"). The Chapter 15 Debtors, along with certain other direct and indirect subsidiaries of Holdings[1] are subject to proceedings (the "Canadian Proceedings") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36, as amended (the "CCAA"), sanctioned by the Ontario Superior Court of Justice (Commercial List) in Toronto (the "Canadian Court"). I submit this declaration (the "1519 Declaration") in support of the Ex Parte Application For an Order (A) Granting Provisional Relief and (B) Scheduling Hearing on Shortened Notice Pursuant to Sections 105(a), 1519 and 1521(a)(7)

---

[1] The Chapter 15 Debtors, along with Li-Cycle Corp. and Li-Cycle Americas Corp. (collectively, the "CCAA Applicants") have all sought relief in the Canadian Proceedings (as defined above). The term "Li-Cycle," as referred to herein, shall mean the CCAA Applicants, along with their affiliates in Europe and Asia who have not sought protection in the Canadian Proceedings.

of the Bankruptcy Code, (the "Provisional Stay Motion") being filed contemporaneously herewith.

2. Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents or information supplied to me and are true to the best of my knowledge, information and belief.

3. In preparing this declaration, I reviewed the: (i) Verified Petition for Recognition of Foreign Main Proceeding Under 11 U.S.C. §§ 1515 and 1517 and for Related Relief (the "Verified Petition") submitted contemporaneously herewith, (ii) the record of materials that the CCAA Applicants submitted to the Canadian Court on May 12, 2025 seeking relief in the Canadian Proceedings, a true and correct index of which is attached hereto as **Exhibit A**,[2] and (iv) all documents appended as exhibits hereto and all information referenced with citations herein. All facts set forth in this declaration are based on: (a) my knowledge; (b) my review of the relevant documents; or (c) my opinion based upon my experience and knowledge of the Chapter 15 Debtors' operations. If called to testify, I could and would testify competently to the facts set forth herein.

4. I have submitted another declaration in support of the Verified Petition. I submit this declaration separately to highlight the facts that support the Provisional Stay Motion and the urgent need for a stay in the above-captioned Chapter 15 cases (the "Chapter 15 Cases") to prevent the Chapter 15 Debtors from suffering irreparable harm during the interim period between the filing of the Verified Petition and the date on which the Verified Petition is granted.

5. In particular, certain of the Chapter 15 Debtors' lessors may seek to enforce against the US property of the Chapter 15 Debtors, take steps to possess the Chapter 15

---

[2] Due to the volume of materials submitted to the Canadian Court, I have attached only an index thereof. The full submission can be made available at this Court's request.

2

Debtors' property, or otherwise interfere with the Chapter 15 Debtors' business in the United States, which could obstruct the Chapter 15 Debtors' efforts in the Canadian Proceedings to sell inventory stored at these locations or cause them to lose their warehouse buildings.

6. Additionally, the Chapter 15 Debtors are currently entangled in numerous legal proceedings in the United States and continued engagement in those proceedings would impose substantial costs, drain limited resources, and distract from the Chapter 15 Debtors' efforts at success in the Canadian Proceedings.

7. An interim stay is therefore critical to prevent enforcement actions and preserve the integrity of the Chapter 15 Debtors' assets during the period between the filing of the Verified Petition and the date the Court grants the relief requested therein. Without the immediate relief sought through the Provisional Stay Motion, the Chapter 15 Debtors risk losing the ability to effectively administer their estate in the Canadian Proceedings and maximize value for stakeholders.

### I. Li-Cycle's Leased Properties

8. The Chapter 15 Debtors do not own any real property except for certain improvements on the ground leases at the Rochester Hub. However, the Chapter 15 Debtors' ability to access and conduct business at their leased properties at the following locations is in imminent danger given that the Chapter 15 Debtors have been unable to make the rent payments due on May 1, 2025 for each of these properties.

9. *The Rochester Hub Plant Ground Lease*. U.S. HubCo leases the land for the Rochester Hub pursuant to a ground lease with Ridgeway Properties I, LLC that runs to March 31, 2042. A true and correct copy of that ground lease agreement is attached hereto as **Exhibit B**. The ground lease agreement provides that it is an event of default if lessee fails to make a required payment within 15 days after receiving written notice of such failure. *See* Ex. B at § 16(a). On May 2, 2025, the lessor sent U.S. HubCo a written notice alleging that U.S. HubCo

3

was in default for failing to timely make payments, and that failure to make payment by May 17, 2025 would be an event of default allowing the lessor to obtain a judgment for damages and, ultimately, repossess the leased land. A true and correct copy of that letter is attached hereto as **Exhibit C**.

10. *The Rochester Hub Warehouse Ground Sublease*. U.S. HubCo entered into an amended and restated ground sublease agreement with Pike Conductor Dev. 1, LLC to rent the land on which the Rochester Hub's warehouse and administrative building is situated. U.S. HubCo paid $53,541,711.77 towards the construction of this building. The sublease runs through March 31, 2049. A true and correct copy of the ground sublease agreement is attached hereto as **Exhibit D**. The sublease agreement provides that it is an event of default if lessee fails to make a required payment within 15 days after receiving written notice of such failure. *See* Ex. D at § 16(a). On May 2, 2025, the landlord sent U.S. HubCo a written notice alleging that U.S. HubCo was in default for failure to make timely payments, and that failure to make such payments by May 17, 2025 would be an event of default allowing it to terminate the lease and accelerate all obligations pursuant to the Sublease. A true and correct copy of that May 2, 2025 letter is attached hereto as **Exhibit E**.

11. *Mechanics Liens*. Contractors performing work on the Rochester Hub and Rochester warehouse and administrative building have asserted approximately $60.7 million-worth of mechanics' liens against the Chapter 15 Debtors' interests in those properties. Certain lienors have sought to force a sale of property to satisfy the mechanics' liens. Other lienors may do the same.

12. *The Rochester Spoke*. Li-Cycle commenced operating a Spoke in Rochester, New York in late 2020. The New York Spoke premises are leased by U.S. SpokeCo pursuant to a lease with the Eastman Kodak Company that currently runs to June 30, 2029, a true and correct copy of which is attached hereto as **Exhibit F**. Pursuant to the lease, if U.S. SpokeCo

4

defaults in the payment of rent for a period lasting for five days after written notice, the landlord may terminate the lease or relet the premises. In the event of termination, the landlord may be able to enter and repossess the premises should the tenant fail to immediately surrender the premises. *See* Ex. F at § 15.

13. *The Rochester Office, Lab and Storage Space*. The Rochester Office, Lab and Storage space are leased by U.S. HubCo pursuant to a lease with the Eastman Kodak Company, a true and correct copy of which is attached hereto as **Exhibit G**. The lease has the same termination, repossession and abandonment provisions as the lease governing the Rochester Spoke. *See* Ex. G at § 15.

14. *The Arizona Spoke*. In May 2022, Li-Cycle commenced operations at its Spoke in Gilbert, Arizona. The Arizona Spoke premises are leased by U.S. SpokeCo pursuant to a lease that currently runs to February 29, 2032, a true and correct copy of which is attached hereto as **Exhibit H**. Pursuant to this lease, if the tenant fails to pay rent after five days of the due date or within a potential five-day grace period, or if tenant fails to continuously operate within the Arizona Spoke during any such time, it is a default and landlord can terminate the lease, retake possession of the premises, and keep in place and use the Debtor's property therein. *See* Ex. H at §§ 19-20.

15. *The Arizona Spoke Warehouse*. U.S. SpokeCo leases a warehouse in Mesa, Arizona as a storage facility to support the operations of the Arizona Spoke. Li-Cycle leases this storage facility pursuant to a lease with which Power Industrial Owner LLC that runs to May 21, 2034, a true and correct copy of which is attached hereto as **Exhibit I**. Under this warehouse lease, failure to pay rent within ten days after written notice is a default for which the landlord may reenter and take possession of the premises. In the event of default, all fixtures, furnishings, goods, equipment, chattels or other personal property on the premises at the time that landlord takes possession may be stored at the tenant's expense or sold or

5

otherwise disposed of. *See* Ex. I § 17.[3]

16. *The Alabama Spoke.* In the fourth quarter of 2021, Li-Cycle announced the development and construction of a Spoke near Tuscaloosa, Alabama, which commenced operations in October 2022. U.S. SpokeCo leases the Alabama Spoke premises in Northport, Alabama pursuant to a lease with BPG Boone, LLC (as assignee) that runs to June 30, 2042, a true and correct copy of which is attached hereto as **Exhibit J**. Default occurs under the lease if the tenant fails to pay rent within five days of when it becomes due, and upon default, the tenant must immediately surrender the premises, with the lease providing that tenant waives any notice of the landlord's intent to re-enter. *See* Ex. J § 18.

17. *The Alabama Spoke Warehouse*. U.S. SpokeCo also leases a storage facility near Tuscaloosa that supports the operations of the Alabama Spoke pursuant to a lease with Automotive Corridor, LLC that currently runs to December 31, 2030. A true and correct copy of this lease agreement is attached hereto as **Exhibit K**. This lease provides that, if the tenant fails to pay any rent when due, and continues to do so within ten days after receiving notice, then the landlord may elect to terminate the lease and the tenant's right to occupancy upon written notice at any time. *See* Ex. K at §§ 21-22.

18. *The Alabama Office*. U.S. SpokeCo leases an office in Vestavia Hills, Alabama which is used as an engineering office primarily to support Li-Cycle's Rochester Hub project. This office also provides engineering support for Li-Cycle's US operations and capital projects. The premises are leased pursuant to a lease agreement with PZ UZ Building Owner LLC that runs to November 30, 2027. A true and correct copy of this lease is attached hereto as **Exhibit L**. This lease provides that if the tenant fails to pay rent within ten days of the due date, or if such payment is the first missed payment in any calendar year, within ten days of a written

---

[3] U.S. SpokeCo leases another warehouse in Mesa Arizona pursuant to a lease with C1418 Landing 202 LLC and Sherman Street Landing 202 LLC. That warehouse is unused.

demand to make such payment, the landlord may terminate the lease, require the tenant immediately to surrender possession and, if tenant fails to do so, retake possession without any further notice to tenant. *See* Ex. L § 19.

19. As of May 1, 2025, I understand that the Chapter 15 Debtors have been unable to pay rent due on May 1 for the above leased premises. As such, the Chapter 15 Debtors' ability to access and conduct business at its leased properties, and therefore continue to access its valuable assets stored thereupon, is in imminent danger.

### II. US Litigation Against the Chapter 15 Debtors and Their Directors and Officers.[4]

20. <u>US Federal Securities Litigation</u>. On November 8, 2023, a putative class action lawsuit was commenced in the United States District Court for the Southern District of New York against Holdings, as well as its former CEO, former Executive Chairman, and current CEO (together, the "<u>Individual Defendants</u>") on behalf of a proposed class of purchasers of Li-Cycle's common shares. *See Hubiack v. Li-Cycle Holdings Corp., et al.*, No. 23-cv-09894 (S.D.N.Y.). The amended complaint in this lawsuit asserts claims under sections 10(b) and 20(a) of the U.S. Securities Exchange Act of 1934. *See Hubiack v. Li-Cycle Holdings Corp., et al.*, No. 23-cv-09894 (S.D.N.Y.) (Dkt. No. 44). On June 10, 2024, the district court granted defendants' motion to dismiss in full with prejudice. *Hubiack v. Li-Cycle Holdings Corp., et al.*, No. 23-cv-09894 (S.D.N.Y.) (Dkt. No. 58). The lead plaintiff has appealed, *see id.* at Dkt. No. 60, and defendants' appellate brief must be filed on June 2, 2025. A true and correct copy of the circuit court order providing the deadline for defendants' appellate brief is attached hereto as **Exhibit M**.

21. Holdings, a Chapter 15 Debtor, must indemnify the Individual Defendants for legal costs and any liability they incur in this action.

---

[4] The Chapter 15 Debtors are named as defendants in US lawsuits beyond those that are described herein. This 1519 Declaration describes the US legal proceedings for which a stay is urgently needed while the Verified Petition is pending.

7

a) Holdings' states in its F-1 Registration Statement filed with the Securities and Exchange Commission on October 4, 2021 that it shall indemnify, to the maximum extent permitted by law, (i) any director or officer of Holdings; (ii) any former director or officer of Holdings; (iii) any individual who acts or acted at Holdings' request as a director or officer, or in a similar capacity, of another entity, against all costs, charges and expenses reasonably incurred by the individual in respect of any civil, criminal, administrative, investigative or other proceeding in which the individual is involved because of that association with Holdings. A true and correct copy of the F-1 Registration Statement is attached hereto as **Exhibit N**.

b) Section 6.3 of Holdings' bylaws provide for indemnification for directors and officers "against all costs, charges and expenses, including an amount paid to settle an action or satisfy a judgment, reasonably incurred by him in respect of any civil, criminal administrative, investigative or other action or proceeding to which he is made a party by reason of being or having been a director or officer of such corporation or body corporate." A true and correct copy of Holdings' bylaws is attached hereto as **Exhibit O.**

c) Holdings has entered into separate indemnification agreements with its directors and executive officers, in addition to the indemnification provided for in the bylaws. These agreements, among other things, require Holdings to indemnify its directors and executive officers for certain costs, charges and expenses, including attorneys' fees, judgments, fines and settlement amounts, reasonably incurred by a director or executive officer in any action or proceeding because of their association with the Holdings or any of its subsidiaries. A true and correct copy of Holdings' form Director and Officer Indemnification Agreement is attached hereto as **Exhibit P**.

22. These obligations could be substantial, given that the lead plaintiff seeks recovery for an approximately 71% decline in Li-Cycle's market capitalization. *See Hubiack v. Li-Cycle Holdings Corp., et al.*, No. 23-cv-09894 (S.D.N.Y.) (Dkt. No. 44 at ¶¶ 9-11).

23. *Construction Claims*. The Chapter 15 Debtors are subject to various lawsuits following the suspension of construction activity at the Rochester Hub due to the sudden and significant cost overruns that were experienced in 2023.

24. On April 9, 2024, MasTec Industrial Corp. ("MasTec"), the general contractor for the Rochester Hub project, commenced against U.S. HubCo: (i) arbitration proceedings and (ii) a foreclosure action in the Supreme Court, County of Monroe, New York, seeking to

8

foreclose on mechanics' liens it claimed to have for unpaid accounts related to construction of the Rochester Hub. *See Mastec Industrial Corp., Inc. v. Li-Cycle North America, Hub, Inc.*, Index No. E2024006083 (Sup. Ct. Monroe Cty) (Dkt. No. 1). Through these actions, Mastec seeks at least $48,674,848 plus interest, fees, costs and expenses thereon. Although the MasTec foreclosure action currently is stayed pending arbitration, *see Mastec Industrial Corp., Inc. v. Li-Cycle North America, Hub, Inc.*, Index No. E2024006083 (Sup. Ct. Montore Cty) (Dkt. Nos. 114-115), the arbitration is proceeding.

25. On April 29, 2024, U.S. Hubco delivered its arbitration answering statement, which includes counterclaims against MasTec for costs and expenses (including improperly inflated values for work and staffing) in the amount of $27,310,034, plus interest, fees and expenses. The arbitration hearings are scheduled to commence on July 21, 2026 in New York, New York. U.S. Hubco served MasTec with document demands and interrogatories on February 21, 2025 and submitted its response to MasTec's document demands and interrogatories on March 28, 2025.

26. U.S. HubCo is subject to mechanics' liens filed against the Rochester Hub and Rochester warehouse properties in the aggregate amount of approximately $60.6 million and against the Rochester Warehouse in the aggregate amount of approximately $5.1 million.

27. *Other Supplier Cliams.* On February 26, 2025, UDN, Inc. ("UDN") filed a motion for summary judgement in lieu of complaint in the Supreme Court of New York, County of Monroe, alleging U.S. HubCo breached its payment obligations set out in an unsigned agreement. *See UDN Inc. v. Li-Cycle North America Hub, Inc.*, Index No. E2025004271 (Sup. Ct. Monroe Cty) (Dkt. No. 2). UDN claims it is owed $998,532.89, plus interest, attorneys' fees, costs and expenses. *See id.* at Dkt. No. 3. U.S. HubCo filed its opposition to UDN's motion on May 6, 2025, *see id.* at Dkt. No. 14 and UDN's reply submission is due on May 27, 2025. *See id.* at Dkt. No. 9.

9

28. On December 23, 2024, Virginia Transformer Corp. ("VTC") filed a complaint in the United States District Court for Western District of New York, Rochester Division alleging U.S. HubCo breached its contract with VTC. *See Virginia Transformer Corp. v. Li-Cycle North Am. Hub Inc.*, Case No. 2024-cv-06742 (W.D.N.Y) (Dkt. No. 1). VTC claims it is owed $1,077,714.50, plus interest, fees, costs and expenses thereon. *Id.* Li-Cycle filed its Amended Answer and Affirmative Defenses to the complaint on March 4, 2025. *Id.* at Dkt. No. 19. The district court ordered the parties to mediate on or before June 1, 2025, *see id.* at Dkt. No. 23. As a result, the parties have scheduled mediation for May 21, 2025, and Li-Cycle's mediation statement is due on May 16, 2025.

29. For the Court's convenience, I have attached hereto as **Exhibit Q** a (i) list of all parties who are engaged in US litigation or other legal proceedings with the Chapter 15 Debtors, (ii) all US landlords named above, and (iii) all mechanics' liens filed with respect to any of the Chapter 15 Debtors' US properties or assets.

**III.     The Canadian Proceedings and this Chapter 15 Case**

30. To address these adverse events and allow the Chapter 15 Debtors breathing room to seek to maximize value for all of their stakeholders, Li-Cycle and the CCAA Applicants applied for CCAA protection and the Chapter 15 Debtors initiated these Chapter 15 Cases.

31. In particular, on May 14, 2025, the Chapter 15 Debtors initiated the Canadian Proceedings by applying to the Canadian Court to obtain protection pursuant to the CCAA. The Canadian Proceedings are collective judicial proceedings through which the assets and affairs of the Chapter 15 Debtors are subject to the supervision of the Canadian Court, which is tasked with overseeing an orderly and equitable process that proceeds for the benefit of the Chapter 15 Debtors' creditor body as a whole. The goal of the Canadian Proceedings is to identify and consummate a transaction or investment opportunity that will provide maximum

value to all stakeholders, including a potential sale of the Chapter 15 Debtors' US assets.

32. On May 14, 2025, the Canadian Court entered an initial order (the "Initial Order"), in which it granted the CCAA Applicants (including the Chapter 15 Debtors) an initial, ten-day stay before a "comeback" hearing scheduled for May 22, 2025 to grant the stay on a more permanent basis. A true and correct copy of the Initial Order is attached hereto as **Exhibit R**. Until and including May 22, 2025, the Initial Order (i) stays the suspension, discontinuance, termination, repudiation, or rescission of any "agreement, lease" or "sublease" with the Chapter 15 Debtors, *see* Ex. R ¶ 16; (ii) enjoins any persons from exercising any "rights" or "remedies" "against or in respect of" the Chapter 15 Debtors, *id.* at ¶ 15; (iii) stays the commencement or continuation of any "proceeding" or "enforcement process" in "any court or tribunal" that is "in respect of" the Chapter 15 Debtors, or that effects their business or property, *id.* at ¶ 13; and (iv) enjoins the commencement or continuation of any proceedings against the current or former directors and officers of the Chapter 15 Debtors in which such directors and officers are alleged to be liable for the obligations of the Chapter 15 Debtors. *Id.* at ¶ 20.[5]

33. Because the Chapter 15 Debtors have assets and business operations in the United States that are critical to the conduct of the Canadian Proceedings, the Inital Order authorizes me, as the Chapter 15 Debtors duly authorized foreign representative, to seek in these Chapter 15 Cases the application of these provisional stays to any business or property of the Chapter 15 Debtors "located or being conducted within the United States" and to all persons and legal proceedings taking place, located or acting within the United States. *See id.* at ¶ 60.

34. The CCAA Applicants are scheduled to return to the Canadian Court for a

---

[5] The Initial Order also provides that the Debtors must continue to pay all post-petition rent until a lease "is disclaimed in accordance with the CCAA." *See* Ex. R at ¶¶ 8, 11.

11

second, "comeback" hearing (the "Comeback Hearing") on May 22, 2025, in which the Canadian Court is expected to issue orders extending these stay provisions, and authorizing sales procedures and debtor-in-possession financing. I expect that, at the Comeback Hearing, the Canadian Court's initial stay protections will be granted on a more permanent basis. I also expect that, at the Comeback Hearing, the Canadian Court will enter orders authorizing (i) sales procedures, including with respect to assets located in the United States, and (ii) debtor-in-possession financing that is secured by assets located in the United States.

35. Immediate application of these stay provisions to the assets, business operations and contractual rights of the Chapter 15 Debtors within the United States, and to the legal proceedings involving the Chapter 15 Debtors in the United States, is necessary to allow the Chapter 15 Debtors breathing room so that they can focus their efforts on conducting a court-supervised process in the Canadian Proceedings that will allow them to achieve the most beneficial outcome for all their stakeholders in a single, collective process.

36. As detailed above, the Chapter 15 Debtors are subject to various mechanics' liens, securities and civil litigation and other proceedings in the United States and if the stay of proceedings and related relief is not enforced in the United States immediately at the outset of the Chapter 15 Case, I am concerned that creditors and counterparties will take enforcement steps that will prejudice the Chapter 15 Debtors' other stakeholders and will be detrimental to Li-Cycle's ability to maximize the value of its business for the benefit of all of its stakeholders, and may risk its ability to engage in an asset sale for the benefit of all creditors in the Canadian Proceedings.

37. Under the circumstances, Chapter 15 Debtors' respectfully request a hearing for this Court to consider the Provisional Stay Motion, and an the entry of an order applying a provisional stay, on an *ex parte* basis, without waiting for service to be effected on all persons that may be affected by the relief requested in the Provisional Stay Motion. Giving such prior

notice would create a substantial risk that creditors, lessors and other contract counterparties would rush to take actions before implementation of a provisional stay that would undermine or defeat the purpose of the relief sought through the Provisional Relief Motion.

[*remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the information set forth above is true and correct to the best of my knowledge, information and belief.

Date: May 14, 2025
Oakville, Ontario Canada

_____
William E. Aziz
Foreign Representative